**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MISSOURI**
**EASTERN DIVISION**

| | | |
|---|---|---|
| **DAVID E. MADRY,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **Case No. 4:20-CV-299-SNLJ** |
| | ) | |
| **KILOLO KIJAKAZI,** [1] | ) | |
| **Commissioner of the Social** | ) | |
| **Security Administration,** | ) | |
| | ) | |
| **Defendant.** | ) | |

**MEMORANDUM AND ORDER**

Plaintiff David E. Madry applied for disability insurance benefits under Title II of the Social Security Act. His application was denied, and he appealed the denial to an administrative law judge ("ALJ"). After a hearing, the ALJ found plaintiff was able to perform jobs available in the national economy through September 1, 2019, but that he became disabled on that date. Plaintiff was dissatisfied with that partially-favorable decision and requested review by the Appeals Council. The Appeals Council adopted the substance of the ALJ's decisions, but it found that the ALJ had mistakenly calculated the date of plaintiff's disability onset. The Appeals Council determined plaintiff became disabled on September 25, 2019, not September 1, 2019. The Appeals Council's decision stands as the final decision of the Commissioner. Plaintiff now seeks judicial review

[1] Kilolo Kijakazi became the Acting Commissioner of Social Security on July 9, 2021. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Kilolo Kijakazi is substituted, for Andrew Saul as the defendant in this suit.

[#18]. The defendant filed a response brief, but no reply was filed, and the time for doing so has now expired.

As discussed below, the Commissioner's decision is supported by substantial evidence on the record as a whole and is affirmed.

**I. Background**

Plaintiff Madry was born in 1970 and was 45 years old when he alleges he became disabled after a workplace injury involving a fall from a ladder in August 2015. Plaintiff broke his knee and required two surgeries in one month, subsequent rehabilitation, and another surgery a year later. Plaintiff also alleges mental disability from conditions following the accident.

Plaintiff's medical records are straight-forward. After his initial surgeries, his condition quickly improved, such that by December 2015 he had regained full range of motion, his joints were non-tender to palpitation, and his extremities had no edema. Diagnostic imaging documented his successful recovery. In July 2016, plaintiff even reported that he was doing well, noting only that he had been unable to dance at a recent wedding. Plaintiff's orthopedist, Dr. Michael Milne, confirmed that his incisions were well-healed, described plaintiff's condition as "temporary," and expected that he would at some point "be able to get back to his pre-injury level of function." [Tr. 62, 48-89.]

On August 26, 2016, Dr. Milne performed an arthroscopic procedure to address plaintiff's left-knee problems related to a torn meniscus. By early 2017, plaintiff had only mild chondrosis, and his hardware remained in good position. For several months afterwards, Dr. Michael Nogalski provided follow-up care and documented plaintiff's

recovery nearly monthly. The notes for the spring and summer of 2017 consistently reflect his ability to due light duty and sedentary work In July and August, the doctor noted a normal gait. Plaintiff was released from care in August 2017, but he saw Dr. Nogalski again in October complaining of ongoing left-leg weakness. Dr. Nogalski said that he could not find "any objective reason to support a specific nerve issue or intrinsic muscular problem within the left lower extremity." [Tr. 543-44.] Plaintiff's physical therapist reported, during that same period, that plaintiff could walk "without an assistive device with full weight bearing noted during stance phase of gait on the left." [Tr. 1489.]

Although plaintiff reported no anxiety or depression in the months after his knee injury, he complained of anxiety a year after the accident. However, a mental-status examination found that he was fully oriented; demonstrated fair insight and appropriate behavior; displayed a congruent affect, with coherent thought processes; exercised fair judgment; and made fair eye contact. Later, plaintiff received monthly treatment from physician's assistant Maureen Borrego. In notes from those sessions, which were co-signed by Raul Borrego, M.D., plaintiff frequently exhibited a depressed mood, but psychiatric findings were generally unremarkable. For example, Dr. and Ms. Borrego repeatedly documented plaintiff's full alertness and orientation; appropriate affect; and normal speech, behavior, judgment, thought content, cognition, and memory. Plaintiff attributed his depression and anxiety to economic concerns, including worries about losing his home to foreclosure. He does not take psychotropic medications, and he stated that therapy helped him such that he achieved his PTSD counseling goals in early 2018.

Plaintiff asserts that, despite his symptoms, he can perform activities of daily living and functional tasks independently, do personal care with occasional difficulty, make microwave meals occasionally, drive, shop for groceries with his spouse with only occasional use of a motorized cart, shop by computer, use the computer or play games 20-30 minutes at a time, manage finances, watch TV, visit neighbors weekly, visit family monthly, get along with others, pay attention "usually as long as needed," finish tasks, follow instructions "okay," and go out alone.

On September 25, 2019, the ALJ issued his opinion. The ALJ's decision recognized that plaintiff had the severe impairments of left-knee degenerative joint disease with prior fracture and surgeries; left-leg axial neuropathy; mild degenerative disc disease; chronic pain syndrome; depression; generalized anxiety disorder; and post-traumatic stress disorder. The ALJ stated that he found plaintiff's impairments could be expected to cause the alleged symptoms, but that plaintiff's "statements concerning the intensity, persistence and limiting effects of these symptoms are not fully supported…" [Tr. 63.] Thus, the ALJ found that, until September 1, 2019, plaintiff remained capable of unskilled, sedentary work at occupations such as patcher, table worker, and lens inserter and that thus plaintiff was not disabled. The Appeals Council amended the date on which plaintiff did become disabled to September 25, 2019 but otherwise did not disturb the ALJ's decision. Plaintiff appeals.

## II. Disability Determination—Five Steps

A disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has

lasted or can be expected to last for a continuous period of not less than 12 months[.]" 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). A claimant has a disability "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy[.]" *Id.* §§ 423(d)(2)(A), 1382c(a)(3)(B).

The Commissioner follows a five-step sequential process when evaluating whether the claimant has a disability. 20 C.F.R. §§ 404.1520(a)(1), 416.920(a)(1). First, the Commissioner considers the claimant's work activity. If the claimant is engaged in substantial gainful activity, the claimant is not disabled. 20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i).

Second, if the claimant is not engaged in substantial gainful activity, the Commissioner looks to see "whether the claimant has a severe impairment that significantly limits the claimant's physical or mental ability to perform basic work activities." *Dixon v. Barnhart*, 353 F.3d 602, 605 (8th Cir. 2003); *see also* 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). "An impairment is not severe if it amounts only to a slight abnormality that would not significantly limit the claimant's physical or mental ability to do basic work activities." *Kirby v. Astrue*, 500 F.3d 705, 707 (8th Cir. 2007); *see also* 20 C.F.R. §§ 404.1520(c), 404.1520a(d), 416.920(c), 416.920a(d).

Third, if the claimant has a severe impairment, the Commissioner considers the impairment's medical severity. If the impairment meets or equals one of the presumptively disabling impairments listed in the regulations, the claimant is considered

disabled, regardless of age, education, and work experience. 20 C.F.R. §§ 404.1520(a)(4)(iii), (d); 416.920(a)(3)(iii), (d).

Fourth, if the claimant's impairment is severe, but it does not meet or equal one of the presumptively disabling impairments, the Commissioner assesses whether the claimant retains the "residual functional capacity" ("RFC") to perform his or her past relevant work. 20 C.F.R. §§ 404.1520(a)(4)(iv), 404.1545(a)(5)(i), 416.920(a)(4)(iv), 416.945(a)(5)(i). An RFC is "defined wholly in terms of the claimant's physical ability to perform exertional tasks or, in other words, what the claimant can still do despite his or her physical or mental limitations." *Lewis v. Barnhart*, 353 F.3d 642, 646 (8th Cir. 2003) (internal quotations omitted); *see also* 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1). While an RFC must be based "on all relevant evidence, including the medical records, observations of treating physicians and others, and an individual's own description of his limitations," an RFC is nonetheless an "administrative assessment"—not a medical assessment—and therefore "it is the responsibility of the ALJ, not a physician, to determine a claimant's RFC." *Boyd v. Colvin*, 831F.3d 1015, 1020 (8th Cir. 2016). Thus, "there is no requirement that an RFC finding be supported by a specific medical opinion." *Hensley v. Colvin*, 829 F.3d 926, 932 (8th Cir. 2016). Ultimately, the claimant is responsible for *providing* evidence relating to his RFC and the Commissioner is responsible for *developing* the claimant's "complete medical history, including arranging for a consultative examination(s) if necessary, and making every reasonable effort to help [the claimant] get medical reports from [the claimant's] own medical sources." 20 C.F.R. §§ 404.1545(a)(3), 416.945(a)(3). If, upon the findings of the ALJ, it is determined the

claimant retains the RFC to perform past relevant work, he or she is not disabled. 20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv).

Fifth, if the claimant's RFC does not allow the claimant to perform past relevant work, the burden of production to show the claimant maintains the RFC to perform work that exists in significant numbers in the national economy shifts to the Commissioner. *See Bladow v. Apfel*, 205 F.3d 356, 358–59 n.5 (8th Cir. 2000); 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v). If the claimant can make an adjustment to other work that exists in significant numbers in the national economy, the Commissioner finds the claimant not disabled. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)( v). If the claimant cannot make an adjustment to other work, the Commissioner finds the claimant disabled. *Id.* At Step Five, even though the *burden of production* shifts to the Commissioner, the *burden of persuasion* to prove disability remains on the claimant. *Stormo v. Barnhart*, 377 F.3d 801, 806 (8th Cir. 2004).

## III. The ALJ's Decision

At Step One, the ALJ found plaintiff met the insured status requirements through the relevant period, and he had not engaged in substantial gainful activity since the alleged onset date. At Step Two, the ALJ found plaintiff suffers from the following severe impairments: left-knee degenerative joint disease with prior fracture and surgeries; left-leg axial neuropathy; mild degenerative disc disease; chronic pain syndrome; depression; generalized anxiety disorder; and post-traumatic stress disorder/ At Step Three, the ALJ determined plaintiff's severe impairments did not meet or equal a listed impairment.

Next, in Step Four, the ALJ determined plaintiff's RFC. The ALJ found that, until September 1, 2019, plaintiff

> has the residual functional capacity to perform sedentary work as defined in 20 C.F.R 404.1567(a) except he can lift, carry, push, and pull 10 pounds occasionally and less than 10 pounds frequently, sit 6 hours, and stand and walk 2 hours in an 8-hour workday. He needs to [use] a cane for prolonged ambulation. He can occasionally push and pull with the left lower extremity. He cannot kneel, crouch, crawl, or climb ladders, ropes, or scaffolds, but can occasionally climb ramps/stairs, balance, and stoop. He should have no exposure to workplace hazards. He retains the ability to complete simple tasks away from the public.

[Tr. 61.]

Because plaintiff's limitations did not prevent him from doing this work prior to September 1, 2019, the ALJ found that he was not disabled before that date. The ALJ chose that date because it represented 6 months before plaintiff was to reach 50 years of age, at which time plaintiff's new age category would result in a finding of disability under the Medical-Vocational Guidelines.

At plaintiff's request, the Appeals Council reviewed this partially favorable decision, and adopted all of the ALJ's substantive findings. However, the Council found that the ALJ improperly failed to exhibit and consider a psychological evaluation dated July 18, 2019, which reflected an examination conducted by Diane White, M.A., a licensed professional counselor, and co-signed by psychologist Steven Adams, Psy.D.. The Council added the evaluation to the record, but explained that the report in question did not change the weight of the evidence, and therefore did not warrant any revision to the substance of the ALJ's findings.

The Council agreed that a borderline age situation existed in this case such that plaintiff would soon be turning 50, thus moving up an age range and, along with other factors, would result in his being considered disabled. However, the Council found that the ALJ should have applied the date of the decision—September 25, 2019—and not September 1, 2019 (which represented the date six months before plaintiff turned 50 years old) as the date plaintiff became disabled.

## IV. Standard of Review

The Court must affirm the Commissioner's decision if it is supported by substantial evidence on the record as a whole. 42 U.S.C. §§ 405(g); 1383(c)(3). Substantial evidence is less than a preponderance of the evidence but enough that a reasonable person would find it adequate to support the conclusion. *Johnson v. Apfel*, 240 F.3d 1145, 1147 (8th Cir. 2001). This "substantial evidence test," however, is "more than a mere search of the record for evidence supporting the [Commissioner's] findings." *Coleman v. Astrue*, 498 F.3d 767, 770 (8th Cir. 2007) (alteration in original) (*quoting Gavin v. Heckler*, 811 F.2d 1195, 1199 (8th Cir. 1987)). The Court must also consider any evidence that fairly detracts from the Commissioner's decision. *Id.* "[I]f there is substantial evidence on the record as a whole, [the Court] must affirm the administrative decision, even if the record could also have supported an opposite decision." *Weikert v. Sullivan*, 977 F.2d 1249, 1252 (8th Cir. 1992). In reviewing whether the ALJ's decision was supported by substantial evidence, this Court does not substitute its own judgment for that of the ALJ—even if different conclusions could be drawn from the evidence, and

even if this Court may have reached a different outcome. *McNamara v. Astrue*, 590 F.3d 607, 610 (8th Cir. 2010).

## V. Discussion

Plaintiff argues that his case should be remanded for several reasons, all of which he says go to the ALJ's alleged failure to properly evaluate credibility.

First, plaintiff argues that the ALJ did not consider plaintiff's work history when evaluating his credibility. Plaintiff suggests that his consistent and lengthy work history bolsters his subjective complaints. But "an ALJ is not required to discuss every piece of evidence submitted." *Black v. Apfel*, 143 F.3d 383, 386 (8th Cir.1998). Further, "[a]n ALJ's failure to cite specific evidence does not indicate that such evidence was not considered." *Id.*

As the Eighth Circuit has reaffirmed, a reviewing court "review[s] the record to ensure that an ALJ does not disregard evidence or ignore potential limitations, but [does] not require an ALJ to mechanically list and reject every possible limitation." *Nash v. Comm 'r, Soc. Sec. Admin.*, 907 F.3d 1086, 1090-91 (8th Cir. 2018) (internal quotations to *McCoy v. Astrue*, 648 F.3d 605, 615 (8th Cir. 2011) omitted).

Next, plaintiff says that the objective medical evidence supports his pain and limitations. Plaintiff goes on to cite the medical record at length, pointing out the atrophied muscle, the need for a meniscus repair, and treating providers' notes confirming pain and disuse the time plaintiff reached maximum medical improvement in July 2017. Plaintiff points out that these citations support the plaintiff's subjective complaints, which, plaintiff says, should have been believed by the ALJ. The ALJ's

RFC, however, accounted for plaintiff's credible limitations and plaintiff's ongoing problems. The ALJ didn't discredit plaintiff's conditions at all. To the extent plaintiff contends that the ALJ did not properly develop the record, the record contained more than sufficient information for the ALJ to make an informed determination regarding plaintiff's capacity to sustain work, including disability, function, and work background reports; over 1400 pages of medical records from the relevant period; and the transcript from the hearing. It is notable, too, that plaintiff does not address the inconsistencies in the record that were noted by the ALJ. For example, the record showed plaintiff's physical improvement and eventual ability to walk without assistance:

- Dr. Nogalski said plaintiff could perform light duty and sedentary work in April, May, and June 2017. [Tr. 536-38.]
- Dr. Nogalski had reached a "medium to heavy work demand level" and could lift 50 pounds in August 2017. [Tr. 541-42.]
- In October 2017, Dr. Nogalski noted that plaintiff continued to complain of leg weakness, but Nogalski could not find any objective reason to support a specific nerve issue or intrinsic muscular problem. [Tr.543-44.]
- During the same time, plaintiff's physical therapy notes indicated plaintiff could walk without an assistive device with full weight bearing. [Tr. 1489.]

And plaintiff's activities of daily living also fail to support his claims of disabling impairments. As the ALJ stated,

> Despite his symptoms, he could do activities of daily living and functional tasks independently, do personal care with occasional difficulty, make microwave meals occasionally, drive, shop for groceries with his spouse

> with only occasional use of a motorized cart, shop by computer, use the computer or play games 20-30 minutes at a time, manage finances, watch TV, visit neighbors weekly, visit family monthly, get along with others, pay attention "usually as long as needed," finish tasks, follow instructions "okay," and go out alone.

[Tr. 63.]

The ALJ also noted that despite plaintiff's stated need to change position, use a cane, and elevate his leg half the day, the treatment notes contained minimal complaints. Also, "[h]e previously reported only elevating his leg a few hours at night." [Tr. 63.]

Further, the ALJ did not entirely dismiss plaintiff's subjective complaints, as plaintiff seems to suggest. His issues with leg pain, numbness, and decreased mobility were all addressed in the RFC determination.

As for plaintiff's criticism that the ALJ's citations do not all support the proposition that plaintiff failed to wean himself from his cane, the record does include numerous instances of providers noting their encouragement of plaintiff to do so. [Tr. 314, 316-17, 319-20, 322,900, 1099, 1331, 1333-34, 1337-38.] It is also true later providers began to observe that plaintiff should, e.g., "continue with cane and bracing" as late as 2019. [Tr. 775.] However, the ALJ ultimately included within the RFC a restriction to jobs that accommodate for use of a cane for prolonged walking.

It is the ALJ's duty to evaluate the record evidence, not to accept whatever a claimant says as true. Where, as here, a claimant relies on subjective allegations to support his disability claim, the ALJ's evaluation of those allegations will affect which limitations are included in the RFC assessment. *See Wildman v. Astrue*, 596 F.3d 959,

969 (8th Cir. 2010) ("[The claimant] fails to recognize that the ALJ's determination regarding her RFC was influenced by his determination that her allegations were not credible.") (citing *Tellez v. Barnhart*, 403 F.3d 953. 957 (8th Cir. 2005)).

With respect to plaintiff's assertion that the ALJ erred by making decisions that required support from a medical opinion, "[e]ven though the RFC assessment draws from medical sources for support, it is ultimately an administrative determination reserved to the Commissioner." *Winn v. Comm'r, Soc. Sec. Admin*., 894 F.3d 982, 987 (8th Cir. 2018) (internal quotation omitted). Thus, "there is no requirement that an RFC finding be supported by a specific medical opinion." *Hensley v. Colvin*, 829 F.3d 926, 932 (8th Cir. 2016).

Plaintiff notes that the ALJ failed to exhibit and consider the psychological report from July 2019, in which Dr. Adams and Ms. White opined as to plaintiff's mental condition. [Tr. 1666-69.] As the Appeals Council explained, however, that evidence was supplied in a timely manner and should have been admitted into the record by the ALJ. [Tr. 6.] The Appeals Council also explained that the opinions expressed therein "do not change the weight of the evidence,' and would not have changed the outcome of the case. [Tr. 6.] Plaintiff offers no argument to suggests otherwise.

## VI. Conclusion

This Court's review is limited to determining whether the ALJ's findings are based on correct legal standards and supported by substantial evidence. It does not substitute its own judgment for that of the ALJ. *McNamara*, 590 F.3d at 610. Having

found the ALJ's conclusions were supported by substantial evidence and that legal standards were correctly applied, this Court affirms the ALJ's decision.

Accordingly,

**IT IS HEREBY ORDERED** that the Commissioner's decision is **AFFIRMED**, and plaintiff's complaint [#1] is **DISMISSED with prejudice**. A separate judgment will accompany this Order.

Dated this __14th__ day of September, 2021.

STEPHEN N. LIMBAUGH, JR.
SENIOR UNITED STATES DISTRICT JUDGE